IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AURELYS ALERS AND WILLIAM VÉLEZ | |
| Plaintiffs | CIVIL NO.: 14- |
| v. | MEDICAL MALPRACTICE |
| DR. JOSÉ A. BARCELÓ; DR. WILLIAM MÉNDEZ; METRO PAVÍA HOSPITAL, INC., METRO PAVÍA HEALTH SYSTEM, INC., METRO PAVÍA HEALTHCARE CENTERS, INC., METRO PAVIA HEALTHCARE MANAGEMENT SYSTEMS, INC., D/B/A HOSPITAL PAVÍA SANTURCE; INSURANCE COMPANY X; JANE DOE; THE CONJUGAL PARTNERSHIP OF DR. JOSÉ A. BARCELÓ AND JANE DOE; THE CONJUGAL PARTNERSHIP OF DR. WILLIAM MÉNDEZ AND JILL DOE; DR. JOHN DOE; RICHARD ROE | |
| Defendants | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COME NOW Aurelys Alers and William Vélez, by and through their undersigned counsel and respectfully state, allege, and request as follows:

**I. INTRODUCTION AND JURISDICTION**

1. This Court has jurisdiction pursuant to 28 U.S.C. 1332 for diversity of citizenship in a controversy that exceeds $75,000.

**II. PARTIES**

**A. Plaintiffs**

2. Aurelys Alers is of legal age, married to co-plaintiff William Vélez and resident of Jackson Heights, New York (hereafter referred to as **"Aurelys"**).

3. William Vélez is of legal age, married to co-plaintiff Ayrelys Alers and resident of Jackson Heights, New York (hereafter referred to as **"William"**).

## B. Defendants

4. Co-defendant doctor José A. Barceló is of legal age, of unknown marital status, an anesthesiologist and upon information and belief, a resident of Puerto Rico (hereafter referred to as "**Dr. Barceló**").

5. Doctor Barceló is an anesthesiologist employed by Pavía Hospital, as defined hereafter, or has privileges at Pavía Hospital in Santurce.

6. We include unknown defendant Jane Dow as the wife of co-defendant doctor Barceló, in the event he is or was married at the time of the facts alleged in this complaint. We also include their Conjugal Partnership as a defendant to this case.

7. Co-defendant doctor William Méndez is of legal age, of unknown marital status, a surgeon and upon information and belief, a resident of Puerto Rico (hereafter referred to as "**Dr. Méndez**").

8. Doctor Méndez was the surgeon in charge of the plaintiff's operation.

9. We include unknown defendant Jill Doe as the wife of co-defendant doctor Méndez, in the event he is or was married at the time of the facts alleged in this complaint. We also include their Conjugal Partnership as a defendant to this case.

10. Co-defendants Metro Pavía Hospital, Inc., Metro Pavía Health System, Inc., Metro Pavía Healthcare Centers, Inc., Metro Pavía Healthcare Management Systems, Inc. are all included as Puerto Rico corporations that own and/or operate and/or obtain financial benefit from the operation of Pavía Hospital in Santurce, Puerto Rico, (hereafter **"Pavía"**). All these corporations had to be included since an investigation and inquiry made by counsel did not produce a straight answer from Pavía personnel.

11. Upon information and belief, Pavía has two addresses: MaraMar Plaza Ste. 960, 101 Avenida San Patricio, Guaynabo PR 00966 and 255 Avenida Ponce de León, MCS Plaza, Ste. A-267, San Juan, PR 00917.

12. We include unknown defendant Richard Roe as any other corporation or natural person that owns and/or operates and/or obtains financial benefit from the operation of Pavía Hospital in Santurce, Puerto Rico or who is liable in any way for the claim stated in this complaint.

13. Insurance Company X is the name given to any unknown insurance companies that have issued policies covering the claim stated in this complaint, including, but not limited to medical malpractice and/or hospital liability and/or commercial general liability, on behalf of any of the named or unknown defendants. The complaint will be amended to include the name of the insurance companies once it becomes known.

14. Doctor John Doe is any other doctor or person that has committed an act of medical malpractice or negligence against the plaintiffs, but whose name is not known at this time.

15. Richard Roe is any other person who is liable for the claim contained in this complaint and whose identity is unknown at this time.

### III. FACTUAL CONTENTION

16. Co-plaintiff Aurelys was diagnosed with recurring metastatic thyroid carcinoma in 2013. Her endocrinologist, doctor Denise Caro, referred her to doctor William Méndez, a surgeon, for a surgical procedure known as bilateral neck dissection.

17. Aurelys went to doctor Méndez for a consultation and he scheduled her for surgery in September 2013. Aurelys chose to have the procedure done at Centro Médico because it was doctors Méndez's preferred hospital.

18. She did all preparatory tests and showed up at Centro Médico on the day of her scheduled surgery. The surgery was cancelled because the hospital staff was on strike, but not before Aurelys could observe the deteriorated condition of the facilities at Centro Médico. Aurelys even worried about the cleanliness of Centro Médico, especially since there had been a recent bacterial outbreak in the Carolina Centro Médico.

19. After this experience, Aurelys opted to have her surgery at Pavía Hospital, located in Santurce. Doctor Méndez scheduled her next surgery at Pavía for October 14, 2013.

20. A couple of days before her scheduled surgery, Aurelys went to Pavía for the

pre-admission examination. She was interviewed and examined by a nurse and was never interviewed or examined by a doctor. Aurelys told the nurse she had a cold and she suffered allergies and asthma.

21. Aurelys arrived early at Pavía on the day of her operation. She arrived at about 5:30 am. She dressed in a gown and the nurses instructed her to lie in a gurney. One of the nurses proceeded to put an IV in her arm.

22. About an hour later she was feeling fatigued and had difficulty breathing. She told a nurse that was passing by how she felt and asked her what was in her IV since had allergies to lactose and thought the label read something related to lactose. The nurse told her to just breathe deep and relax, that it was surely nervousness.

23. Shortly thereafter, a nurse came to take her to the operating room. While on the way, the nurse noticed she was congested and asked her if she had any allergies. Aurelys told her she had allergies and she recently had a cold. The nurse told doctor Barceló, the anesthesiologist.

24. Doctor Barceló asked Aurelys how she felt. She repeated that she felt fatigued, she had allergies and asthma and she recently had a cold.

25. Doctor Barceló asked Aurelys to open her mouth. He did not check her breathing with a stethoscope or perform any other examination. He simply told her she was ready for the operation.

26. The next thing Aurelys remembers is waking up intubated. Doctor Méndez's interns told her they nearly lost her during the operation and that the operation could not be performed. Then she fell unconscious again.

27. William, Aurely's husband, was told his wife nearly died. He was allowed to see her momentarily. They have known each other since they were children and he was extremely anxious at the thought of losing her.

28. The next time she woke up, doctor Méndez's interns examined her and determined she could be extubated. She was then extubated and sent to a hospital room.

29. Aurelys spent the next three days at the hospital. She felt like she had never felt before, as though she had been hit in the chest by a bat. Every movement of her body was extremely painful.

30. William took care of his wife as much as he could, but he was not allowed to spend the night at the hospital.

31. Aurelys was released from Pavía to continue recuperating at home. She was ordered medication she did not have to take prior to the incident in the form of steroids and pills. William remained at her side taking care of her.

32. Most of what happened on October 14, 2013 is not reflected in Aurelys' medical record, especially her complaints that she was feeling fatigued.

33. The surgery was scheduled for a third time for November 2013. The though of having to go back to the hospital make Aurelys extremely anxious. Aurelys was so anxious about having to go back to the hospital she had a panic attack and went to the emergency room. She was ordered clonazepam and released home.

34. Aurelys went on to have her surgery in November 2013, but not before having to get examined by an allergist, pneumologist and internist.

35. Aurelys continues to have a hard time going to hospitals because of the incident on October 2013, but has to do so often because of her condition.

36. The delay in having the operation performed also caused great suffering to Aurelys since her life is threatened by her diagnosis. Every day of life is a precious gift to Aurelys, more so than to people who have no diagnosis of chronic illness and the defendants took precious days away from the plaintiffs.

37. In fact, doctor Eileen Hart, a specialist in nuclear medicine, recommended Aurelys receive treatment at Memorial Sloan Kettering Cancer Center in New York.

38. Aurelys and her husband William moved in with William's uncle, who lives in Jackson Heights, New York. Since then, they have been residents of New York and are dedicated to fighting for Aurelys' survival.

### IV. CAUSES OF ACTION AND DAMAGES

39. Pavía deviated from the standard of care in the pre-admission process by not having a doctor examine Aurelys.

40. Pavía deviated from the standard of care in the pre-admission process by not having an anesthesiologist examine Aurelys before the surgical procedure.

41. Pavía staff deviated from the standard of care prior to the operation because they ignored Aurelys' complaint that she felt fatigued.

42. Doctor Barceló deviated from the standard of care by administering anesthesia to Aurelys when her symptoms indicated the procedure should be cancelled.

43. Doctor Méndez deviated from the standard of care because he should have examined Aurelys prior to the operation, given her history of asthma. He is also liable because as the surgeon, he is responsible for all actions relating to the procedure.

44. In short, both doctors deviated from the standard of care by failing to perform an adequate pre-anesthesia evaluation in a patient with known bronchial asthma and by proceeding with anesthesia in a patient with known bronchial asthma and evident symptoms of reactive airway disease.

45. Pavía is liable for the actions of the pre-admission personnell, the nursing staff pre-operation and the doctor's actions.

46. All the actions described above caused Aurelys to nearly die and suffer great pain from what was done on her on October 14, 2013 and for weeks thereafter. She has also suffered great anxiety when having to go hospitals for medical treatment and at the thought of the precious time lost in getting treatment.

47. William suffered greatly from learning that his wife nearly died and by having to care for her through the incident that was aviodable.

48. All defendants are jointly liable (solidarios) to the plaintiffs.

49. All defendants are also liable because the medical record does not adequately reflect what happened on October 14, 2013.

50. Co-defendant "Insurance Co. X" is liable to the plaintiffs because it issued an insurance policy that covers the damages claimed herein.

51. John Doe is an unknown co-defendant that caused the damages to the plaintiffs.

52. The damages suffered by co-plaintiff Aurelys are valued in an amount not less than $500,000 and the damages suffered by co-plaintiff Vélez are valued in an amount of not less than $50,000.

WHEREFORE, the plaintiffs respectfully request that this Honorable Court enter judgment against the defendants, in favor of the plaintiffs in an amount of not less than $550,000, in addition to the costs of this action, reasonable attorneys' fees, and such other and further relief as to this Honorable Court seems appropriate under the circumstances.

RESPECTFULLY SUBMITTED in San Juan, Puerto Rico, on October 10, 2014.

/s/Liana Colón Valentín
**LIANA COLÓN VALENTÍN**
COUNSEL FOR PLAINTIFFS
USDC Dist. PR Bar No. 220409
623 Ponce de León Ave.
Executive Bldg., Ste. 302B
San Juan, PR   00917
Tel: (787) 761-4146
Email:   lianacolon@gmail.com