**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**AURELYS ALERS, ET AL.**

**Plaintiffs**

**v.**

**DR. JOSE A. BARCELÓ, ET AL.**

**Defendants.**

**CIVIL NO. 14-1756 (GAG)**

**OPINION AND ORDER**

Aurelys Alers and her husband William Vélez ("Plaintiffs") brought this suit based on diversity of citizenship against numerous defendants seeking emotional damages for alleged medical malpractice when Alers underwent surgery at Hospital Pavía. (See Docket No. 32.) Defendants are Dr. José A. Barceló ("Dr. Barceló"), the anesthesiologist during the operation; Dr. William Méndez ("Dr. Méndez"), the surgeon in charge of Alers' operation; Metro Santurce, Inc., as the Puerto Rico corporation that owns Pavía Hospital of Santurce ("Hospital Pavía") where the operation took place; and Continental Insurance Company ("Continental Insurance"), as the insurance company that covers Plaintiffs' claims against Hospital Pavía. Id.

Presently before the Court are Dr. Barceló and Dr. Méndez's motions for summary judgment. (Docket Nos. 119; 121; 123; 125.) Continental Insurance and Hospital Pavía joined both motions. (Docket Nos. 122; 127.) Plaintiffs opposed Defendants' motions. (Docket Nos. 133; 134.) Dr. Méndez then replied, and Plaintiffs surreplied. (Docket Nos. 136-1; 140-1.) After reviewing the submissions[1] and the pertinent law, the Court **DENIES** Dr. Méndez's motion for

---

[1] Additionally, the Court ordered the parties to provide the Court with any missing exhibits (or pages) used to support their respective statement of facts previously submitted at Docket Nos. 120, 124, 140-2, and 140-3. (See Docket No. 147). The Court did so because while reviewing the submissions and parties' statements of facts, it was

**Civil No. 14-1756 (GAG)**

summary judgment at Docket No. 123, and **DENIES** Dr. Barceló's motion for summary judgment at Docket No. 119.

## I. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by showing that the evidence does "not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R.Civ. P. 56(c)(1)(B). If the court finds that some genuine

---

unable to locate many exhibits as cited by the parties. Thus, many facts were not properly supported by the record, in clear violation of Local Rule 56.
    Plaintiffs complied with this order, and included all missing pages from Mrs. Alers' deposition, and Dr. Puppala's deposition. (See Docket Nos. 151-52.) Plaintiffs also included once again their Sur-Reply to Reply to Opposition to Motion for Summary Judgment. The Court will only analyze Plaintiffs' original sur-reply at Docket No. 140-1. Dr. Méndez complied with the order, but also decided to add facts to its original statement of facts. (See Docket No. 153.) This is not what the Court ordered. Thus, the Court will only analyze Dr. Méndez' original statement of uncontested facts at Docket No. 124. Dr. Barceló did not comply with this order, but instead, a day after it was due, filed a Motion for Extension of Time to comply with the order. (Docket No. 155). The Court denied said motion for extension of time. (See Docket No. 156.) Any fact not included in Section II, *infra*, is either immaterial or not properly supported by the record.

factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Mun. of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.  Relevant Factual and Procedural Background[2]

### A.  Dr. Barceló's Statement of Uncontested Facts

Plaintiff Alers was diagnosed with thyroid cancer in 2013. (Docket No. 120 ¶ 1.) She was referred to Dr. Méndez for a bilateral neck dissection surgery. Id. ¶ 2. Surgery was scheduled for October 14, 2013 at Pavía Hospital. Id. ¶ 4. Dr. Barceló was the anesthesiologist in charge of Alers operation. Id. ¶ 5. A week before the surgery, Alers went to Hospital Pavía for her pre-surgery evaluation, and she told the nurse she felt hot and had a cold, although she did not take her temperature with a thermometer. Id. ¶¶ 6-7. The nurse told her to rest and make sure she was ready for surgery on October 14, 2013. Id. ¶ 6.

---

[2] Dr. Méndez's moves to deem admitted all uncontested statement of facts, due to Plaintiffs' failure to comply with Local Rule 56. (Docket No. 136-1 at 3-4.) Local Rule 56(e) is clear: when a party files a statement of facts, whether in support or in opposition to summary judgment, those facts will be deemed admitted unless properly controverted. Parties who ignore any provision of Local Rule 56, "do so at their own peril." Ruis Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000). Plaintiffs failed to properly controvert the following statements of facts by Dr. Méndez at Docket No. 124: ¶¶ 1-6, 8, 10-13, 15-19, 22-25, 27-33. The Court deems said statements admitted. Additionally, Plaintiffs failed to properly controvert some of Dr. Barceló's Statement of Facts at Docket No. 120: ¶¶ 1-10, 13, 15-25, 28, 30-32, 34, 37. The Court deems said statements admitted.

3

**Civil No. 14-1756 (GAG)**

Defendants contend that on the day of the surgery, Dr. Barceló administered a pre-anesthesia evaluation at 11:05 a.m., and reviewed all of Alers' symptoms. Id. ¶ 11. Dr. Barceló testified that during the pre-anesthesia evaluation he inquired into her respiratory condition and cardiovascular system, blood pressure, central nervous system, tumor in thyroid, bronchial asthma, and other information regarding her medical history, finding out she had a history of bronchial asthma and was allergic to certain foods and medications, but had no previous anesthetic complications. Id. ¶¶ 11-12. Alers had a history of asthma, but she acknowledged it had been a long time since her last episode or any need to use asthma medication. Id. ¶ 10.

Alers was taken to the Operating Room at 11:15 a.m., and Dr. Barceló maintains she was once again interviewed and given pre-medication, and was found fit for surgery. (Docket No. 120 ¶ 14.) Alers disagrees, countering that Dr. Barceló never saw her "again" and that he only saw her once, at the operating room. (Docket No. 152-1 at 71.) Alers testified that when the nurse told Dr. Barceló that Alers was feeling a cold, Dr. Barceló opened her mouth, took a quick look, and then established she was ready for surgery. Id. at 71-72.

Anesthesia was administered at about 11:30 a.m. Id. ¶ 14. Upon induction, Alers developed signs of hard breathing, which consisted of a bronchospasm. Id. Treatment was administered and the bronchospasm resolved. Id. ¶ 16. Still, Dr. Méndez and Dr. Barceló agreed that the procedure should be re-scheduled as a precautionary measure. Id. ¶ 17. Alers was transferred to a recovery room with ventilator support, and the respiratory condition continually monitored. Id. ¶ 18. After consulting a pneumologist, she was taken off the ventilator at 2:00 p.m., but remained under observation until 4:30 p.m. when she was transferred to a hospital room. Id. Alers was eventually discharged from Pavía Hospital in a stable condition on October 16, 2013

at 7:10 a.m.. Id. ¶ 22.  The surgery eventually happened at Centro Medico during the month of November, and was carried without complications. Id. ¶ 23.

Dr. Puppala characterized the injury in this case as "self-limited" or limited to an episode of a bronchospasm without any long lasting repercussions. Id. ¶ 25. Dr. Puppala admitted that the anesthetic used in this case, Propofol, reduces the incidence of bronchospasm in patients with asthma, and that some patients can react to the insult of the intubation with a bronchospasm. Id. ¶¶ 27, 31. Defendants maintain there is no formal protocol to follow with a patient that has a history of asthma, but with no active episode of respiratory airway disease. (Docket No. 120 ¶ 30.)  Dr. Puppala admitted that a patient with a well-controlled asthma condition, and who does not have any symptoms, is a patient that, for all purposes, has no condition. Id. ¶ 36; see also (Docket No. 151-2 at 108.)  However, because Alers had no prior anesthetic complications, Dr. Puppala testified she should not have complications while undergoing anesthetic care. (Docket No. 140-3 ¶ 26.) Dr. Puppala maintains that Dr. Barceló's failure to assess if Alers had symptoms in the first place is the crux of this case.

B. Dr. Méndez's Statement of Uncontested Facts[3]

Alers decided to have the surgery performed by Dr. Méndez at Hospital Pavía. (Docket No. 124 ¶ 5.) Dr. Méndez maintains Alers did not complain or report to him or any nurse that she was short of breath, fatigued, or having an allergic reaction, and that to the contrary, when he met her at the holding area Alers said she was ready for surgery. (Docket No. 124-4 at 4.) Plaintiffs counter that Alers did report to the nurses twice that she was feeling fatigued that morning, that she did not feel well, and that a nurse asked her if she was feeling fine because she could notice Alers was having trouble breathing, to which Alers responded that she had a cold the week before

---

[3] For brevity's sake, the Court will not include any facts already discussed under Dr. Barceló's statement of uncontested facts, which also apply to Dr. Méndez's motion.

**Civil No. 14-1756 (GAG)**

surgery, and that she was asthmatic. (Docket No. 152-1 at 64-66.) Dr. Puppala admitted that Dr. Méndez did not take any part in the administration of the anesthesia. (Docket No. 124 ¶ 22.)

**III.   Discussion**

In a diversity suit, Puerto Rico substantive law is controlling. See Hanna v. Plumer, 380 U.S. 460, 467 (1965); see also Lama v. Borrás, 16 F.3d 473, 477-78 (1st Cir. 1994). Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31 § 5141, governs a physician's liability in a medical malpractice suit. Cortés-Irizarry v. Corporación Insular de Seguros, 111 F.3d 184, 189 (1st Cir. 1997). Three elements comprise a *prima facie* case of medical malpractice: "(1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and harm." Marcano v. Turabo Medical Center Partnership, 415 F.3d 162, 167 (1st Cir. 2005).

Puerto Rico courts have held, with regards to the first element, that the duty owed to a patient is "[t]hat [level of care] which, recognizing modern means of communication and education, . . . meets the professional requirements generally acknowledged by the medical profession." Lama, 16 F.3d at 478 (quoting Oliveros v. Abreu, 101 P.R. Dec. 209, 226 (P.R. 1973)). The standard is considered national and should generally be proven through expert testimony. Santana Otero v. United States, 428 F. Supp. 2d 34, 46 (D.P.R. 2006). A plaintiff must also prove, by a preponderance of the evidence, that the standard of care was not met for that specific type of patient. Pages Ramirez v. Hospital Español Auxilio Mutuo de Puerto Rico, Inc., 547 F. Supp. 2d 141 (D.P.R. 2008); see also Rodríguez Crespo v. Hernández, 21 PR. Offic. Trans. 637, 647 (P.R. 1988). The third element, or causation, is established when plaintiff proves by a preponderance of the evidence "that the physician's negligent conduct was the factor that most probably caused harm to [the patient]." Marcano, 415 F.3d at 168 (citing Lama, 16 F.3d at 478).

Causation need not be established with mathematical accuracy, yet, it cannot be based on mere speculation.  See Lama, 16 F.3d at 479.  As to the causation element, "expert testimony is generally essential."  Id. at 478.

      A.  Dr. Barceló's Motion for Summary Judgment

Dr. Barceló moves for summary judgment on Plaintiffs' medical malpractice claim arguing that Plaintiffs have failed to state a direct correlation between the alleged absence of a pre-evaluation of the patient and the development of a bronchospasm during the induction of anesthesia prior to Plaintiff Alers' surgical procedure.  (Docket No. 119.)  Dr. Puppala maintains that the standard of care for an anesthesiologist to a patient with known bronchial asthma is to pre-assess before surgery whether the patient has any active signs or symptoms of reactive airway disease that could affect the intubation, and to delay or cancel the surgery if warranted.  (Docket No. 133-1 at 2.)  Thus, the issue is whether Dr. Barceló properly evaluated Alers before surgery, whether the evaluation was well-documented, and whether the surgery should have been cancelled before administering the anesthesia.

While Dr. Barceló claims that he administered two separate evaluations, consisting of in depth inquiries into respiratory conditions, bronchial asthma, and other information regarding her medical history, Alers asserts no airway evaluation happened.  She testified that she told the nurse and Dr. Barceló that she had a cold the week before surgery, and reported she had a history of bronchial asthmatic.  Alers maintains that Dr. Barceló only took a quick look inside her mouth, and deemed her ready for surgery, without further evaluation.  Alers was classified as ASA II, due to her asthma history.[4]  (Docket No. 120-3 ¶ 7.)  Dr. V.K. Puppala ("Dr. Puppala"), Plaintiffs' expert,

---

[4] The ASA physical status classification system, developed by the American Society of Anesthesiologists (ASA), classifies an ASA II patient as "a patient with mild systemic disease."  American Society of

explains that ASA II is an elevated risk of anesthetic care. (Docket No. 152-3 at 51.) Specifically, Plaintiffs' expert testified that Dr. Barceló breached the standard of care because there was no detailed documentation of the review of systems that day, which led him to believe that no evaluation was performed. Id.; see also (Docket No. 152-3 at 109-10.) However, Dr. Puppala did agree that there is no formal protocol in a patient with history of asthma, but with no active episode of respiratory airway disease, other than asking the patient about her symptoms. Thus, issues of fact remained as to whether Dr. Barceló breached the applicable standard of care by failing to perform an adequate pre-anesthesia evaluation.

Having established that, Plaintiff still has to show causation.[5] Dr. Barceló maintains there is no direct correlation between the alleged absence of a pre-evaluation and the development of a bronchospasm. He alleges that it is possible that even without such evaluation Alers could have developed a bronchospasm because that is an imminent risk for patients with asthma during the administration of this type of anesthesia. Dr. Barceló also maintains that the bronchospasm could have been caused by other reasons such as airway sensitivity, the intubation itself or other allergies. However, it is not Plaintiff's burden to eliminate every other possible cause of damage. See Cruz Rodríguez v. Corporación de Servicios del Centro Médico, 113 P.R. Dec. 719, 744 (P.R. 1983) (13 P.R. Offic. Trans. 931, 961) ("[I]t has been pointed out how difficult it is in these cases

---

Anesthesiologists, ASA PHYSICAL STATUS CLASSIFICATION SYSTEM, October 15, 2014, http://www.asahq.org/resources/clinical-information/asa-physical-status-classification-system.

[5] Dr. Barceló also attacks Dr. Puppala's testimony as a causation expert, given that Dr. Puppala confessed he did not know whether Alers had active severe symptoms before the surgery and that he attributed the causation to the lack of evidence in the medical record regarding Alers' evaluation, with no further connection to the medical treatment provided. Id. ¶ 29. Plaintiffs counter that the crucial issue here is whether the evaluation was proper and documented, and whether the surgery should have been cancelled based on that evaluation. (Docket No. 140-3 ¶ 29.) However, Defendants counter that Dr. Puppala's opinion, that the alleged deviation from the standard of care in this case arises from failing to perform a pre-anesthetic and pre-surgical evaluation of bronchial asthma, is not based on any medical literature. (Docket No. 120 ¶ 33.) Plaintiffs maintain Dr. Puppala's opinion is based on the Basic Standards for Anesthesia Care by the American Society of Anesthesiologists. (Docket No. 140-3 ¶ 33.)

to establish which factor m[o]st probably led to the damage, [e]specially when the case deals with the physicians' failure to offer a treatment whose results cannot be foreseen.") (internal citations omitted). Dr. Puppala established that it is more medically probable to a degree of medical certainty that a failure to assess reactive airway disease in a patient with known bronchial asthma can ultimately cause a bronchospasm. Dr. Puppala admits that in his professional judgment, patients with a history of reactive airway disease are likely to develop bronchospasms with the type of intubation conducted here. Thus, genuine issues of fact remain as to all elements of Plaintiffs' *prima facie* case. Dr. Barceló's Motion for Summary Judgment at Docket No. 119 is hereby **DENIED**.

B. Dr. Méndez's Motion for Summary Judgment

Dr. Méndez moves for summary judgment arguing that he did not deviate from the acceptable standard of care, his alleged omission was not the most likely cause of plaintiffs' alleged damages, and a reasonable jury could not render an award of more than $75,000.[6] (See Docket No. 125.) Plaintiffs counter that not only Dr. Barceló, but also Dr. Méndez failed to perform an adequate pre-anesthesia evaluation given Alers' asthma history.

As it applies to Dr. Méndez, Dr. Puppala states in his report that "the standard of care for a reasonably prudent surgeon performing a radical neck dissection in a patient with known bronchial asthma is to perform a pre-surgical assessment to evaluate for the presence of any active signs or symptoms of reactive airway disease that may affect endotracheal intubation and to delay or cancel

---

[6] In part, Dr. Méndez' moves for summary judgment arguing that no reasonable jury would render an award greater than $75,000 and thus the Court lacks subject matter jurisdiction. (Docket No. 125 at 5.) Dr. Méndez already argued this at the motion to dismiss stage. (See Docket No. 73.) The Court stands by its ruling in its Opinion and Order at Docket No. 112. It is not a legal certainty that the claim involves less than the jurisdictional amount. See Alers v. Barceló, CV 14-1756 (GAG), 2016 WL 226847, at *6 (D.P.R. Jan. 19, 2016). Dr. Méndez' renewed motion on the same basis is once again **DENIED**.

an elective case if indicated."[7]  (Docket No. 152-2.)  Dr. Puppala also testified that Dr. Méndez failed to perform a pre-evaluation on the day of the surgery, update the medical history and physical assessment, and perform a systems' review.  (Docket No. 152-3 at 102.)  Dr. Puppala maintains that Dr. Méndez's failure to adequately pre-assess Alers for signs and symptoms of reactive airway disease "resulted in the development of bronchospasm in Ms. Alers."  (Docket No. 152-2.)

Dr. Méndez argues that Plaintiffs' position that Dr. Barceló's failure to perform an adequate examination was the proximate cause of Alers' bronchospasm makes it impossible that Dr. Méndez could also be negligent.  "There are often several causes, however, which contribute to an injury."  Heddinger v. Ashford Meml. Community Hosp., 734 F.2d 81, 85 (1st Cir. 1984).  Thus, Plaintiffs' presented evidence suffices to raise genuine issues of material fact as every element of Plaintiffs' *prima facie* case.  Dr. Méndez's Motion for Summary Judgment at Docket No. 123 is hereby **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 4th day of August, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[7] Dr. Méndez attempted to counter Dr. Puppala's testimony by including in his statement of facts excerpts from a report from his own expert, Dr. Pablo Rodríguez.  (See Docket No. 124 ¶ 34.)  Yet, Dr. Méndez failed to provide any citation to support this fact from the record or any of the exhibits at Docket No. 124.  Noticing this, as well as the other counsels' failure to comply with Local Rule 56, the Court gave all parties a second chance to "provide the Court with any missing exhibits (or pages) used to support their respective statement of facts."  (Docket No. 147.)  Dr. Méndez submitted a motion in compliance, and a supplemented statement of uncontested facts.  (Docket Nos. 153; 153-1.)  In this new statement of facts, Dr. Méndez cites "Exhibit 10 – Expert Report by Dr. Pablo Rodríguez Ortiz dated July 10, 2015" as the source for Dr. Rodríguez's expert report at Paragraph 34.  (Docket No. 153-1.)  This expert report, found at Exhibit 6 of Docket No. 153, contains only a cover page titled "Exhibit 10 – Expert Report Dr. Pablo Rodríguez Ortíz" and nothing else.  Needless to say, as submitted, this exhibit does not properly support paragraph 34, and as such, must be disregarded by the Court.  See L.R.CIV. 56(e).